IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
MIDLAND/ODESSA DIVISION

| | | |
|---|---|---|
| **HERBERT GRAHAM,** § | | |
| § | | |
| *Plaintiff,* § | | |
| § | CIVIL ACTION | |
| vs. § | | |
| § | NO: __16-cv-286__ | |
| **TPII, LLC, BRYAN KEITH BURNS,** § | | |
| **HEIDI NEWFIELD,** § | | |
| § | | |
| *Defendants.* § | JURY DEMANDED | |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Plaintiff, Herbert Graham ("Graham"), files this Original Complaint, and in support thereof respectfully alleges and states as follows:

### I. PARTIES

1. Graham is an individual and a resident of the State of Texas, who resides at 16325 Chinaberry, Gardendale, Texas 79758 and maintains a place of business at 6999 E. Business I-20, Odessa, Texas 79762.

2. Defendant TPII, LLC ("TPII") is a limited liability company organized under the laws of the State of Tennessee, with its principal place of business at 33 Music Square West, Suite 102B, Nashville, Tennessee 37203-6607. TPII may be served through its registered agent Harris Business Management, Inc., c/o Rebecca Harris, at the same address.

3. Defendant Bryan Keith Burns ("Burns") is an individual who, upon information and belief, is a managing member of TPII. Burns may be served at his residence address, which upon information and belief is located at 811 Gale Lane, Unit 323, Nashville, Tennessee 37204.

4. Defendant Heidi Newfield ("Newfield") is an individual who, upon information and belief, is a managing member of TPII. Newfield may be served at her residence address, which upon information and belief is located at 1010 16th Avenue South, Unit #203, Nashville, Tennessee 37212.

## II. JURISDICTION AND VENUE

5. This action involves claims related to federally registered trademarks under Section 32 of the Lanham Act, codified at 15 U.S.C. § 1114, as well as a claim for breach of contract under the laws of the State of Texas. The state cause of action arises from a case and controversy concerning trademarks under the Lanham Act. This Court has subject matter jurisdiction over these claims under 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338, & 1367.

6. This Court has personal jurisdiction over Defendants because they have contracted with Graham, a resident within the Western District of Texas, and agreed to at least partially perform the contract within this district, and because, upon information and belief, have contracted to perform services within this State.

7. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b).

## III. FACTS

8. Graham is the owner of United States Trademark Registration Nos. 4,522,403 and 4,615,059, both for the mark TRICK PONY (collectively, the "TRICK PONY Marks").

9. On or about December 15, 2011, Graham filed U.S. Trademark Application Serial Number 85/496,298 in the United States Patent and Trademark Office ("USPTO") to register the mark TRICK PONY in connection with musical recordings and variety of promotional goods (the "Promotional Goods Mark"). On or about April 29, 2014, the USPTO registered the Promotional

Goods Mark as U.S. Registration Number 4,522,403. A copy of the registration certificate for the Promotional Goods Mark is attached hereto as **Exhibit 1**.

10.  On or about September 25, 2013, Graham filed U.S. Trademark Application Serial Number 86/074,085 in the USPTO to register the mark TRICK PONY in connection with live performances by a musical band (the "Live Performance Mark"). On or about September 30, 2014, the USPTO registered the Live Performance Mark as U.S. Registration Number 4,615,059. A copy of the registration certificate for the Live Performance Mark is attached hereto as **Exhibit 2**.

11.  Among other things, 15 U.S.C. § 1057(b) establishes that the certificates of registration attached as **Exhibits 1 & 2** constitute *prima facie* evidence that Graham owns the TRICK PONY Marks and that he has the exclusive right to use the TRICK PONY Marks in commerce on or in connection with the goods or services specified therein.

12.  As the owner of the TRICK PONY Marks, Graham has the right to license others to use the Marks.

13.  Defendants Burns and Newfield are both musicians who have used the TRICK PONY Marks pursuant to a license from Graham.

14.  On or about March 1, 2014, Graham licensed TPIII, LLC to use the TRICK PONY Marks during the year 2014, with a document titled "Trademark & Design License Agreement," a copy of which is attached hereto as **Exhibit 3** ("2014 Trademark License").

15.  Defendants Burns and Newfield were members of TPIII, LLC at the time it executed the 2014 Trademark License and Newfield signed the 2014 Trademark License on behalf of TPIII, LLC.

16. Acting through Burns and Newfield, TPIII, LLC rendered live musical performances using the Live Performance Mark under the 2014 Trademark License.

17. Section 11 of the 2014 Trademark License indicates that license continued in effect through the 2014 tour dates listed on Schedule A attached thereto.

18. On or about January 1, 2015, Graham licensed Defendant TPII to use the TRICK PONY Marks during the year 2015, with a document titled "Trademark & Design License Agreement," a copy of which is attached hereto as **Exhibit 4** ("2015 Trademark License").

19. The 2015 Trademark License provides that it is to be at least partially performed in Texas. For example, Section 8 of that agreement obligates Defendant TPII to send products and marketing materials bearing the licensed marks to Graham at his business address of 6999 E. Business I-20, Odessa, Texas 79762, for Graham to review the style, appearance, and manner of TPII's use of the licensed marks. Section 2 provides Graham with the right to examine any of TPII's products bearing the mark "at his office in Odessa, TX" to determine if the products are acceptable. Further, Section 14 obligates TPII to send royalty payments to Graham at his Odessa business address, and Section 13 obligates TPII to send all notices under that agreement to Graham's Odessa business address.

20. Defendant Newfield signed the 2015 Trademark License on behalf of Defendant TPII.

21. Upon information and belief, Defendants Burns and Newfield were both managing members of Defendant TPII and were the only members of Defendant TPII at the time Newfield signed the 2015 Trademark License.

22. Upon information and belief, Defendants Burns and Newfield are presently the only members of Defendant TPII and manage Defendant TPII. It is believed, and therefore alleged, Defendant TPII has never had any members other than Defendants Burns and Newfield.

23. Acting through Burns and Newfield, Defendant TPII rendered live musical performances using the Live Performance Mark under the 2015 Trademark License.

24. Section 11 of the 2015 Trademark License indicates that license continued in effect until December 31, 2015, and that the obligations in Sections 3, 4, 6, 9 and 12 continue to be in effect after the termination or expiration thereof.

25. After December 31, 2015, Graham requested Defendants sign a new trademark license for 2016, but Defendants denied Graham's request.

26. On or about January 7, 2016, unbeknownst to Graham, Defendant TPII filed with the USPTO two applications to register THE PONIES as a trademark: U.S. Trademark Application Serial Number 86/868,145 in connection with musical performances and U.S. Trademark Application Serial Number 86/868,220 in connection with various clothing items.

27. Defendant Burns filed TPII's two trademark applications for THE PONIES.

28. On or about January 12, 2016, Graham filed with the USPTO U.S. Trademark Application Serial Number 86/872,433 for THE PONIES in connection with live performances by a band and in connection with clothing items.

29. On or about April 5, 2016, Burns and Newfield hand delivered to Graham the letter attached hereto as **Exhibit 5** ("April 5 Letter"), to inform Graham that "we will not utilize your personal management services after April 5, 2016." *Id.* Burns and Newfield also acknowledged Graham "was entitled" under a "prior verbal agreement" to receive a "commission" for shows that the William Morris Endeavor Entertainment, LLC booking agency

had booked prior to the April 5 Letter. *Id.* The shows were listed in the exhibit attached to the April 5 Letter and included a show in Texas.

30. Defendants' April 5 Letter also alleged Graham had fraudulently secured his registration of the TRICK PONY Marks through "fraudulent statements, representations and specimens," and demanded that Graham "surrender" the TRICK PONY registrations. Additionally, the April 5 Letter demanded Graham withdraw his pending application to register THE PONIES concurrently with his surrender of his TRICK PONY registrations.

31. At the time Defendants delivered the April 5 Letter, Burns and Newfield had already performed at least four shows under the TRICK PONY mark in 2016, but were not authorized to do so because the Defendants had not entered into a trademark license agreement with Graham for the year 2016. Although a fifth show was scheduled for March 26, 2016 in Freeport, Illinois, the show was cancelled and Defendants did not perform.

32. Between April 5, 2016 and May 10, 2016, Burns and Newfield performed at least eight shows under the TRICK PONY Marks even though none of the Defendants had previously entered into a trademark license agreement with Graham for 2016 and were not authorized to do so.

33. On or about May 10, 2016, Graham, through counsel, responded to Defendants' April 5 letter with the letter attached hereto as **Exhibit 6** ("May 10 Letter"). The May 10 Letter informed Defendants that continuing to use the TRICK PONY Marks without a license constitutes an infringement of Mr. Graham's trademark rights and constitutes a breach of the 2015 Trademark License. Accordingly, Graham demanded that Defendants either enter into suitable trademark license for 2016 or cease and desist their use of the TRICK PONY Marks or any mark confusingly similar thereto.

34. The May 10 Letter also informed Defendants that their pending trademark applications for THE PONIES was confusingly similar to the TRICK PONY Marks and were in violation of Section 9 of the 2015 Trademark License. As such, the May 10 Letter demanded Defendants file a notice of express abandonment in those trademark applications, which was in accordance with Graham's rights under the provisions of Section 9.

35. Finally, the May 10 Letter requested Defendants to respond with their intentions, and to do so prior to the concert scheduled for May 13, 2016.

36. On or about May 11, 2016, Defendant Newfield responded to the May 10 Letter with an accusation that Graham fraudulently placed her signature on the 2015 Trademark License, but did not otherwise state Defendants' intentions. However, Defendants' actions since receiving the May 10 Letter clearly demonstrate Defendants' intentions.

37. Since receiving the May 10 Letter, Burns and Newfield have performed numerous shows under the TRICK PONY Marks, and are currently engaged to perform future shows under the TRICK PONY Marks. Further, it is believed, and therefore alleged, Defendants have sold goods bearing the TRICK PONY Marks since receiving the May 10 Letter.

38. It is believed, and therefore alleged, Defendant Burns and Newfield have the sole decision-making authority for Defendant TPII and exclusively control TPII.

39. It is believed, and therefore alleged, since December 31, 2015, Defendants Burns and Newfield have performed shows and sold goods under the TRICK PONY Marks throughout the United States by and through Defendant TPII. In particular, it is believed, and therefore alleged, Defendants have, at a minimum, performed shows at the locations listed under the "Tour History" heading from the webpage printout attached hereto as **Exhibit 7**.

40. Defendants have paid Graham a 15% commission for the shows they have performed to date that the William Morris Endeavor Entertainment, LLC booking agency booked prior to April 5, 2016. Defendants' commission payments for these shows were in exchange for Graham's services with respect to these shows. These commission payments were not in exchange for the use of the TRICK PONY Marks.

41. Additionally, it is believed, and therefore alleged, one or more of the Defendants owns a Facebook account and operates a Facebook page under the TRICK PONY Marks, located on the Internet at https://www.facebook.com/trickponymusic ("Trick Pony Facebook Page"). It is believed, and therefore alleged, Burns and Newfield post messages to the Trick Pony Facebook Page under the TRICK PONY Marks, and sometimes refer to themselves as "The Ponies" in these Facebook messages. The messages posted to the Trick Pony Facebook Page since the May 10 Letter further demonstrates Defendants continue to use the TRICK PONY Marks.

42. Additionally, it is believed, and therefore alleged, one or more of the Defendants owns a Twitter account and posts messages (*i.e.*, "tweets") under the TRICK PONY Marks, said Twitter account being shown on the Internet at https://twitter.com/TrickPonymusic ("Trick Pony Twitter Account"). It is believed, and therefore alleged, Burns and Newfield tweet messages through the Trick Pony Twitter Account under the TRICK PONY Marks, and sometimes refer to themselves as "The Ponies" in these tweets. The messages posted through the Trick Pony Twitter Account since the May 10 Letter further demonstrates Defendants continue to use the TRICK PONY Marks.

## IV. CAUSES OF ACTION

### COUNT I
### FEDERAL TRADEMARK INFRINGEMENT

43. The allegations set forth in Paragraphs 1 through 42 are incorporated by reference as if fully set forth herein.

44. Defendants' continued use of the TRICK PONY Marks described above is likely to cause confusion or mistake or deception to purchasers as to the source of the properties and services and constitutes trademark infringement in violation of the *Lanham Act,* 15 U.S.C. § 1114.

45. Additionally, THE PONIES, when used in connection with those goods and services described in TPII's trademark applications referenced above, is confusingly similar to the TRICK PONY Marks, and Defendants' use of THE PONIES is an attempt to trade off the goodwill of the TRICK PONY Marks. Accordingly, Defendants' use of THE PONIES described above is likely to cause confusion or mistake or deception to purchasers as to the source of the properties and services and constitutes trademark infringement in violation of the *Lanham Act,* 15 U.S.C. § 1114.

46. Graham has not licensed or otherwise authorized any Defendant to use the TRICK PONY Marks or THE PONIES mark since December 31, 2015.

47. Defendants' use of the TRICK PONY Marks suggests a connection or affiliation with Graham, as the owner of the TRICK PONY Marks, which they do not have.

48. Additionally, Defendants' use of THE PONIES suggests a connection or affiliation with Graham, as the owner of the TRICK PONY Marks, which they do not have.

49. Graham currently has no control over the nature and quality of the goods and services offered by Defendants under the TRICK PONY Marks and/or under THE PONIES, due

to their unlicensed use of same. Further, Graham is not able to control Defendants' posts to the Trick Pony Facebook Page and Defendants' posts through the Trick Pony Twitter Account. Accordingly, the goodwill associated with the TRICK PONY Marks is at risk and will suffer if Defendants' actions are allowed to continue.

50.     Graham has invested significant time and resources into developing the goodwill associated with the TRICK PONY Marks. The goodwill of the TRICK PONY Marks is of substantial value to Graham, and Graham has suffered and will continue to suffer irreparable harm should the infringement by Defendants be allowed to continue.

51.     Based upon information and belief, Defendants' trademark infringement will continue unless enjoined by this Court.  Pursuant to 15 U.S.C. § 1116, Graham seeks a preliminary and permanent injunction against further trademark infringement by Defendants. As part of the injunction, Graham seeks a Court order requiring Defendants to turn over to Graham the Trick Pony Facebook Page and the Trick Pony Twitter Account, and to provide Graham with the login and password information for the Facebook account for the Trick Pony Facebook Page and for the Trick Pony Twitter Account so that Graham can control the content posted through those accounts.

52.     Defendants' acts of trademark infringement have damaged Graham in an amount not yet determined. Pursuant to 15 U.S.C. §1117, Graham is entitled to and seeks Defendants' profits, actual damages, and costs of this action and such additional relief as may be deemed appropriate and awarded by this Court.

53.     Defendants' acts of trademark infringement have been and continue to be deliberate and willful and warrant an award of enhanced damages. Accordingly, Graham is

entitled to and seeks a finding that this case is exceptional and warrants an award of attorneys' fees pursuant to 15 U.S.C. §1117(a)

## COUNT II
## BREACH OF WRITTEN CONTRACT

54. Plaintiff hereby incorporates by reference the allegations contained in Paragraphs 1-53 as if fully set forth herein.

55. In Section 11 of the 2015 Trademark License, Defendant TPII agreed to "cease and discontinue completely further use of" the TRICK PONY Marks after that license expired on December 31, 2015.

56. Defendant TPII has continued to use the TRICK PONY Marks since December 31, 2015, and has done so at the direction of Burns and Newfield. Accordingly, TPII has breached Section 11 of the 2015 Trademark License.

57. In Section 9 of the 2015 Trademark License, Defendant TPII agreed not to register any mark resembling or confusingly similar to the TRICK PONY Marks. TPII further agreed that it would abandon any application to register a mark that, in Graham's sole opinion is "confusingly similar, deceptive or misleading" to the TRICK PONY Marks. Section 9 of the 2015 Trademark License continues to be in effect pursuant to Section 11 of the 2015 Trademark License.

58. With the May 10 Letter, Graham indicated to Defendants that he considered TPII's pending trademark applications to register THE PONIES as resembling or being confusingly similar to the TRICK PONY Marks, and Graham demanded TPII file a notice of express abandonment of those applications.

59. To date, TPII has not abandoned its two trademark applications for THE PONIES nor has TPII indicated it will abandon those applications. TPII has, therefore, breached Section 9 of the 2015 Trademark License.

60. In Section 9, TPII also admitted the TRICK PONY Marks are valid and agreed not to challenge same.

61. Defendants' April 5 Letter claimed Graham fraudulently obtained the TRICK PONY Marks, thereby implying a threat to challenge the validity of the TRICK PONY Marks. Defendants' statements in the April 5 Letter is contrary to TPII's admission of validity and constitutes a breach—or an anticipatory breach—of the 2015 Trademark License.

62. By at least the acts complained of above, TPII has breached the 2015 Trademark License, and Defendants Burns and Newfield have directed such breach.

63. Graham has been damaged by TPII's breach of the 2015 Trademark License. As a direct result of the breach, Graham has been forced to incur expenses in bringing the present litigation.

64. Graham has complied with his obligations in the 2015 Trademark License.

65. Under Texas Civil Practices and Remedies Code § 38.001(8), Graham is entitled to and seek his reasonable and necessary attorneys' fees for prosecuting this cause of action.

66. Further, Graham seeks a Court order requiring TPII to specifically perform its obligation in Section 9 of the 2015 Trademark License, requiring it to discontinue use of the TRICK PONY Marks and to expressly abandon the trademark applications for THE PONIES.

67. Moreover, Graham may incur additional costs and expenses, including additional attorneys' fees, to oppose TPII's pending trademark applications for THE PONIES if TPII does not abandon those applications, and Section 9 of the 2015 Trademark License obligates TPII to

{00152987.4}

reimburse Graham for same. Accordingly, Graham seeks as damages, any and all costs and expenses, including attorney fees, he incurs related to any opposition of TPII's pending applications for THE PONIES.

## V. JURY DEMAND

Graham hereby demands a trial by jury for all issues so triable alleged in this Complaint.

## VI. PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff Graham respectfully prays that this Court enter judgment as follows:

a. That Defendants Burns and Newfield, and TPII, LLC, and its officers, agents, employees, attorneys, corporations, or companies under the control of TPII, LLC, and all other persons in active concert and/or participation with TPII, LLC, be permanently enjoined from engaging in the acts of trademark infringement complained of herein, including without limitation use of TRICK PONY, THE PONIES, and any other confusingly similar mark;

b. That Defendants be ordered to turn over to Graham the Trick Pony Facebook Page and the Trick Pony Twitter Account, and to provide Graham with the login and password information for the Facebook account for the Trick Pony Facebook Page and for the Trick Pony Twitter Account so that Graham can control the content posted through those accounts;

c. That Defendants be ordered to provide an accounting of all revenue received from the sale of products and services resulting from their acts of trademark infringement complained of herein and that Defendants pay all profits received by them, as well as any other damages suffered by Graham as a result of their actions;

     d.     That Defendants' acts of trademark infringement are deliberate and willful, that this is an exceptional case, and that Graham be awarded enhanced damages, attorneys' fees for this action, and costs of court;

     e.     That Graham is awarded his attorneys' fees for this action due to Defendant TPII, LLC's breach of contract;

     f.     That Defendant TPII, LLC be ordered to abandon U.S. Trademark Application Serial Numbers 86/868,145 and 86/868,220 for THE PONIES.

     g.     That Defendant TPII, LLC be ordered to pay to Graham any and all costs and expenses, including attorney fees, he incurs related to any opposition of TPII's pending applications for THE PONIES;

     h.     That Graham be awarded prejudgment and post-judgment interest; and

     i.     For such other and further relief to which Plaintiff Graham shows himself to be justly entitled.

Dated:  August 3, 2016                Respectfully submitted,

                                               /s/ *John C. Cave*
                                               John C. Cave
                                               Texas State Bar No. 00783812
                                               Edward B. Marvin
                                               Texas State Bar No. 24055917
                                               GUNN, LEE & CAVE, P.C.
                                               300 Convent, Suite 1080
                                               San Antonio, TX 78205
                                               (210) 886-9500
                                               (210) 886-9883 Fax
                                               john.cave@gunn-lee.com
                                               edward.marvin@gunn-lee.com

                                               **ATTORNEYS FOR PLAINTIFF,
                                               HERBERT GRAHAM**